No. 24-60383

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

## NICKOLAS ANTHONY TRABUCCO
Plaintiff-Appellant

## V.

## ANDRES RIVERA
Defendant-Appellee

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI, OXFORD DIVISION
CIVIL ACTION NO. 3:22-CV-132

---

## BRIEF OF APPELLANT

---

## ORAL ARGUMENT REQUESTED

---

Brandon Flechas, MS Bar No.: 102283
STROUD, FLECHAS & DALTON
5779 Getwell Road, Suite C-1
Southaven, MS 38672
Telephone: (662)536-5656
Facsimile: (662)536-5657
Email: brandon@stroudlawyers.com

# CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Nickolas Trabucco, Plaintiff-Appellant

2. Andres Rivera, Defendant-Appellee

3. Philip Stroud, Brandon Flechas, and Stroud, Flechas & Dalton, Attorneys for Plaintiff-Appellants

4. R. Jeff Allen and Hunt, Ross, and Allen, Attorneys for Defendant-Appellee

5. Travelers Insurance

6. Honorable Michael P. Mills, Senior United States District Court Judge, Northern District of Mississippi

SO CERTIFIED, this the 5th day of December, 2024.

/s/*Brandon Flechas*
Brandon Flechas
Attorney for Appellant, Nickolas Trabucco

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests this Court grant oral argument, as oral argument would aid in the Court's understanding of the factual issues presented on this appeal. Appellant welcomes the opportunity to answer questions the Court may have regarding the legal and factual issues presented in this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS..........................................................i

STATEMENT REGARDING ORAL ARGUMENT..................................................ii

TABLE OF AUTHORITIES...............................................................................iv

STATEMENT OF JURISDICTION.......................................................................1

STATEMENT OF THE ISSUES...........................................................................2

STATEMENT OF THE CASE.............................................................................3

    *Undisputed facts*...............................................................................3

    *Rivera's version of the facts*.............................................................4

    *Trabucco's version of the facts*.........................................................6

    *Course of proceedings*.....................................................................7

SUMMARY OF THE ARGUMENT.....................................................................8

ARGUMENT...................................................................................................10

    *Standard of review*.........................................................................10

    *The district court erred in denying Trabucco's motions for judgment as a*
    *matter of law on the issue of liability*...............................................11

    *Clearly established law*....................................................................14

    *The district court erred in its instruction to the*
    *jury on qualified immunity*..............................................................22

    *Salazar and Escobar are not applicable to this case*...................................22

    *Analogous factual context should have been provided to the jury*................27

    *The jury's verdict was irreconcilably conflicted and unsupported*
    *by substantial evidence*...................................................................31

CONCLUSION................................................................................................36

CERTIFICATE OF SERVICE.............................................................................38

CERTIFICATE OF COMPLIANCE .....................................................................39

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Alexander v. City of Round Rock*,
  854 F.3d 298 (5th Cir. 2017)......................................................................11-12

*Autin v. City of Baytown*,
  174 Fed. App'x 183 (5th Cir. 2005)..................................................................19

*Bagely v. Guillen*,
  90 F.4th 799 (5th Cir. 2024)........................................................11, 17, 19, 25

*Brosseau v. Haugen*,
  543 U.S. 194, 125 S.Ct. 596, 160 L.Ed. 2d 583 (2004)............................20, 30

*Buehler v. Dear*,
  27 F.4th 969 (5th Cir. 2022).............................................................................11

*Byrd v. Cornelius*,
  52 F.4th 265 (5th Cir. 2022)..............................................................................11

*Cadena v. Ray*,
  728 Fed. Appx. 293 (5th Cir. 2018)..............................................................18-19

*Cloud v. Stone*,
  993 F.3d 379 (5th Cir. 2021)..........................................................18, 25, 30

*Cooper v. Brown*,
  844 F.3d 517 (5th Cir. 2016)..........................................................13, 20, 29

*Darden v. City of Fort Worth*,
  880 F.3d 722 (5th Cir. 2018)........................................................................18-19

*Deville v. Marcantel*,
  567 F.3d 156 (5th Cir. 2009)..........................................................................16, 28

*Ducksworth v. Landrum*,
62 F.4th 209 (5th Cir. 2023)...........................................................11

*Elizondo v. Green*,
671 F.3d 506 (5th Cir. 2012)...........................................................11

*Escobar v. Montee*,
895 F.3d 387 (5th Cir. 2018).......................................................24-27

*Graham v. Connor*,
490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).........12, 13, 20, 27, 33

*Hanks v. Rogers*,
853 F.3d 738 (5th Cir. 2017)...............................16, 19-20, 28-30, 36

*Hiltgen v. Sumrall*,
47 F.3d 695 (5th Cir. 1995)..............................................................22

*Hope v. Pelzer*,
536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)...........................20, 30

*Hunter v. Bryant*,
502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)............................26, 32

*Ikerd v. Blair*,
101 F.3d 430 (5th Cir. 1996)...........................................................11

*Kerstetter v. Pacific Scientific Co.*,
210 F.3d 431 (5th Cir. 2000)...........................................................10

*Lytle v. Bexar County, Tex.*,
560 F.3d 404 (5th Cir. 2009)...........................................................18

*Mason v. Faul*,
929 F.3d 762 (5th Cir. 2019)......................................................35, 36

*Newman v. Guedry*,
 703 F.3d 757 (5th Cir. 2012)..............................................16, 20, 29

*Pearson v. Callahan*,
 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)....................................27

*Peña v. Rio Grande City*,
 879 F.3d 613 (5th Cir. 2018).....................................................18-19

*Pratt v. Harris Cnty.*,
 822 F.3d 174 (5th Cir. 2016).......................................................18

*Presley v. City of Benbrook*,
 4 F.3d 405 (5th Cir. 1993)......................................32, 33, 34-35, 36

*Puga v. RCX Solutions, Inc.*,
 922 F.3d 285 (5th Cir. 2019).....................................................22, 31

*Salazar v. Molina*,
 37 F.4th 278 (5th Cir. 2022)......................................................22-27

*Scott v. Harris*,
 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed. 2d 686 (2007)................................17

*Sikes v. Gaytan*,
 218 F.3d 491 (5th Cir. 2000)........................................................32

*Snyder v. Trepagnier*,
 142 F.3d 791 (5th Cir. 1998)...........................................31-32, 34, 36

*Trammell v. Fruge*,
 868 F.3d 332 (5th Cir. 2017)..........................................15-16, 30, 35

*U.S. v. Corp. Mgm't, Inc.*,
 78 F.4th 727 (5th Cir. 2023)........................................................10

**Statutes**

28 U.S.C. § 1291.................................................................1

28 U.S.C. § 1331.................................................................1

28 U.S.C. § 1391.................................................................1

42 U.S.C. § 1983.................................................................1

**Other Authorities**

F.R.A.P. 4..........................................................................1

F.R.A.P. 32........................................................................38

U.S. CONST. amend. IV........................................................7

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which grants district courts jurisdiction over civil actions arising under the Constitution of the United States and laws of the United States. This case was brought pursuant to 42 U.S.C. § 1983, as the plaintiff alleged violation of his right to be free of the use of excessive force under the Fourth Amendment to the Constitution following his arrest by a deputy sheriff of the DeSoto County, Mississippi, Sheriff's Department. ROA.13. to ROA.17. As the events took place in DeSoto County, Mississippi, venue was proper in the United States District Court, Northern District of Mississippi, Oxford Division, pursuant to 28 U.S.C. § 1391.

Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1291, as this appeal is from a final judgment of a United States District Court. Final judgment denying plaintiff's post-trial motions was entered by the United States District Court on July 24, 2024. ROA.652. to ROA.654. Notice of Appeal was filed in this Court on July 29, 2024, making this a timely appeal pursuant to Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure. ROA.655. This appeal is from a final judgment which disposes of all parties' claims.

## STATEMENT OF THE ISSUES

I.      Whether the district court erred in denying Appellant's motions for judgment as a matter of law.

II.     Whether the district court erred in instructing the jury on qualified immunity.

III.    Whether the jury's verdict was irreconcilably conflicted and unsupported by substantial evidence.

# STATEMENT OF THE CASE

## *Undisputed facts:*

Nickolas Trabucco was arrested by DeSoto County, Mississippi, Sheriff's deputy, Andres Rivera on July 7, 2021. Rivera was fueling his vehicle at the J&J fuel station located at 2870 Highway 51 South in Hernando, Mississippi.[1] Trabucco entered the parking lot of J&J, driving his green Chevrolet Cruz, and parked in a parking space at the front of the store. ROA.214. at 0:00-0:09. Trabucco did not immediately exit his vehicle, and Rivera began walking toward Trabucco's vehicle approximately 30 seconds after Trabucco parked. ROA.214. at 0:39.

Rivera approached the driver door of Trabucco's car. ROA.214. at 0:39-1:06. Upon Rivera's request, Trabucco exited the vehicle. ROA.214. at 1:34. Shortly after Trabucco exited the vehicle, Rivera tackled Trabucco to the ground. ROA.214. at 1:36. The two men struggled with each other on the ground and briefly after they stood up. ROA.214. at 1:36-1:46. Rivera then shoved Trabucco away and drew his taser. ROA.214. at 1:48-1:52. Trabucco, who lost one shoe in the altercation, removed his other shoe and then dropped to his knees with his hands raised. ROA.214. at 1:52-1:59. One second after Trabucco dropped to his knees with his

---

[1] J&J was covered by video surveillance. The video was entered into evidence at trial as Exhibit J-4. There is a placeholder for the surveillance video, which was conventionally filed with the district court, at ROA.214. Appellant will cite to ROA.214. when referring to the surveillance video.

hands visibly raised, Rivera fired his taser into Trabucco's back. ROA.214. at 2:00. Trabucco writhed on the ground in pain for 9 seconds and then lay flat on his stomach with his hands behind his back. ROA.214. at 2:00-2:09.

A second video was introduced into evidence at trial.[2] This video offers a slightly closer perspective of the events surrounding the tasing, and it offers some audio. ROA.131. Just before being tased, Trabucco can be heard yelling, "I've done nothing wrong." ROA.131. at 0:04. Notably, Rivera cannot be heard giving any verbal orders on this video, and his mouth does not appear to be moving to give such verbal orders before tasing Trabucco. ROA.131. at 0:00-0:06.

***Rivera's version of the facts:***[3]

Rivera stated that Trabucco's tires squealed as his car pulled into the parking space at J&J. ROA.132. When Rivera approached Trabucco's vehicle, Rivera stated the Trabucco rolled down his window and loudly asked what he did. ROA.132. Rivera asked for Trabucco's license and Trabucco screamed loudly to someone on the phone that he was going to jail. ROA.132. Trabucco leaned over, reached to the passenger side of his vehicle, and Rivera ordered Trabucco to exit the vehicle. ROA.132. Trabucco exited the vehicle. ROA.132. While Rivera stated in his report

---

[2] This video was introduced as Exhibit J-5. It is a cell phone video recorded from within the J&J convenience store. When the video was filed conventionally, a placeholder was filed at ROA.131. Appellant will cite to that page of the record when referring to this video.
[3] Rivera authored a narrative report (ROA.132.) and gave deposition and trial testimony. These facts are gleaned from those portions of the record.

that his intent in ordering Trabucco out of the vehicle was to place Trabucco under arrest (ROA.132.), Rivera did not actually tell Trabucco that he was being placed under arrest when he ordered him out of his vehicle. ROA.135. to ROA.136.

Once Trabucco exited the vehicle, Rivera stated that Trabucco began to walk toward the rear of the vehicle. ROA.132. Rivera stated that he told Trabucco to stop and turn around and that he grabbed Trabucco's arm. ROA.132. According to Rivera's report, Trabucco pulled his arm from Rivera, pushed Rivera, and began to flee toward the rear of the vehicle. ROA.132. Rivera stated that he then wrapped his arms around Trabucco's upper body and took him to the ground. ROA.132. At trial, Rivera testified, in contradiction to his report, that Trabucco did not actually push him, but just pushed his arm away. ROA.926.; ROA.938. Rivera admitted in his deposition Trabucco was not actually fleeing when he was tackled. ROA.140.[4]

After tackling Trabucco to the ground, Rivera stated that he and Trabucco were wrestling. ROA. 143. to ROA.144. When the men stood up, Rivera stated that he placed his arms under Trabucco's arms and around Trabucco's neck to lock his shoulders. ROA.132. Rivera confirmed that Trabucco never punched, kicked, struck, or verbally threatened Rivera during the encounter. ROA.144.

After he pushed Trabucco away and drew his taser, Rivera stated he gave Trabucco orders to go to the ground. ROA.132. Rivera stated that Trabucco went to

---

[4] This is apparent on the video. ROA.214. at 1:34-1:36.

his knees while Rivera was ordering Trabucco to go to his stomach. ROA.132. Rivera stated that while on his knees, Trabucco was still not complying. ROA.132. Rivera stated that Trabucco made a sudden move and that it appeared that Trabucco was going to stand up, and Rivera tased Trabucco in the back. ROA.132.

### *Trabucco's version of the facts:*

Trabucco left work early on July 7, 2021, to visit his grandmother at the hospital in Southaven, Mississippi. ROA.251. to ROA.252. Trabucco stopped at J&J on the way to the hospital to get a soda, and he was speaking to his grandmother using Bluetooth in his car when he stopped at J&J. ROA.251. to ROA.252.; ROA.270. Trabucco stated that his tires never squealed when he was in the parking lot of J&J. ROA.251.

When Rivera approached Trabucco's vehicle, Trabucco stated that he asked Rivera "What did I do?" and Rivera told Trabucco to get out and walk to the rear of the car. ROA.253. to ROA.255. After exiting his car, Trabucco stated that there were no verbal orders given by Rivera, but that Rivera grabbed Trabucco's arm, turned him around, and then tackled him to the ground. ROA.257. to ROA.259.

After Rivera pushed Trabucco away and pulled his taser, Trabucco stated that there were no verbal orders given by Rivera. ROA.262. to ROA.264. Trabucco stated that he went to his knees because he was trying to surrender to Rivera who had a taser pointed at him. ROA.264. As can be seen on the videos, Trabucco was then

tased. ROA.214. at 2:00-2:09; ROA.131. at 0:06-0:16. Trabucco testified that the tasing was the most excruciating pain he had ever felt. ROA.268.

An independent eyewitness, Jessica Stanton, testified at trial. Stanton can be seen in front of the J&J store on the surveillance video. ROA.214. at 1:50 and 2:35. Stanton testified that she heard Trabucco screaming, "What did I do? I don't know what I did wrong. I didn't do anything wrong." ROA.754. She stated that she did not hear Rivera giving Trabucco any orders despite being in a position where she could have heard him if he did. ROA.755.

### *Course of proceedings:*

Trabucco filed suit in the United States District Court for the Northern District of Mississippi, Oxford Division, on July 7, 2022, alleging Rivera used excessive force against him in violation of his rights under the Fourth Amendment to the United States Constitution. ROA.13. Trabucco filed a motion for partial summary judgment on the issue of liability. ROA.127. Rivera also filed a motion for summary judgment. ROA.167. The district court denied the motions for summary judgment, finding that genuinely disputed issues of material fact precluded summary judgment for either party. ROA.449. to ROA.452. The cause was tried before a jury beginning on October 16, 2023.

At the close of evidence, each party moved for directed verdict, realleging the arguments made in their respective motions for summary judgment. ROA.1009. to

ROA.1011. The district court denied those motions. ROA.1011. The case went to the jury, and a verdict was returned finding that the force used by Rivera violated Trabucco's constitutional right to be free from excessive force. ROA.559. However, the jury's verdict also found Rivera to be entitled to qualified immunity. ROA.559. Trabucco filed a post-trial motion seeking judgment as a matter of law, or in the alternative, new trial. ROA.569. The district court denied Trabucco's post-trial motion. ROA.652. Trabucco filed this appeal. ROA.655.

## SUMMARY OF THE ARGUMENT

This case was appropriate for judgment as a matter of law in favor of Trabucco at the summary judgment stage, at the directed verdict stage, and in the post-trial stage. While there were disputed facts, those disputes were not genuinely related to material elements of the case. In other words, even giving every reasonable inference to Rivera's version of the facts, there was no justification for Rivera's use of force against Trabucco. It is clear that Trabucco was offering no active resistance and was not fleeing when he was tackled to the ground. Further, it is clear that Trabucco was surrendered, on his knees, with his hands visibly in the air when he was shot in the back with a taser by Rivera. The law was clear that this force amounted to excessive force in violation of Trabucco's constitutional rights. Further, this was an obvious case of excessive force which did not require prior precedent directly on point to put Rivera on notice. Judgment as a matter of law should have been granted to Trabucco.

The district court's jury instruction on qualified immunity was improper in that it included quotes from non-analogous cases. Further, the qualified immunity instruction failed to provide the jury with sufficient factual context to aid the jury in understanding the body of relevant case law as of July 7, 2021. Since the question of qualified immunity turns on the law as it existed as of that date, it is imperative that such factual context be included in the instructions to the jury, and excluding such pertinent context creates substantial and ineradicable doubt that the jury was properly guided on the issue it its deliberations. As the jury found the force used by Rivera to be excessive, it is clear that the qualified immunity instruction affected the outcome of the case.

As a result, the jury's verdict was irreconcilably conflicted and unsupported by substantial evidence. In order for this Court to justify the jury's finding that Rivera used excessive force, but that it was a reasonable mistake, this Court must be able to point to something that Rivera reasonably believed which, if true, excuses the use of excessive force. There is nothing on this record which supports Rivera's use of force. Rivera did not perceive Trabucco as a threat. Rivera did not suspect Trabucco had a weapon, and Rivera never perceived Trabucco to behave as if he were armed. Trabucco was not fleeing or presenting any physical or active resistance. Based upon what Rivera says he perceived, the law is clear that force is not warranted. Trabucco was tackled 2 to 3 seconds after exiting his car while offering no active resistance

and not fleeing. Trabucco was on his knees surrendered with his hands visibly raised when he was tased in the back just one second after going to his knees. Under these circumstances, the law is clear that the use of force was excessive in violation of Trabucco's constitutional rights.

## ARGUMENT

***Standard of review*:**

A denial of a motion for judgment as a matter of law is reviewed *de novo*, using the same analysis as the district court, and the district court's ruling will only be reversed if there is no legally sufficient evidentiary basis for a reasonable jury to have found for the nonmovant. *United States v. Corporate Management, Inc.*, 78 F.4th 727, 736 (5th Cir. 2023)(Internal citations omitted). Deference is given to the jury's verdict in review. *Id.*

When there are genuinely disputed issues of material fact, summary judgment is inappropriate, but when the record before a district court is such that, taken as a whole, no reasonable trier of fact could find for the nonmoving party, then there is no genuine issue for trial, and summary judgment is appropriate. *Kerstetter v. Pacific Scientific Co.*, 210 F.3d 431,435 (5th Cir. 2000)(Internal citations omitted). While there were disputed facts in this case, the factual disputes were not genuine, and no reasonable jury could have found in favor of Rivera.

***The district court erred in denying Trabucco's motions for judgment as a matter of law on the issue of liability:***

To prevail on an excessive-force claim, a plaintiff must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012). One need look no further than the videos to see and hear that Trabucco suffered excruciating pain. ROA.214. at 2:00-2:09; ROA.131. at 0:06-0:16. Trabucco testified that the tasing was the most excruciating pain he had ever felt. ROA.268. See *Bagely v. Guillen*, 90 F.4th 799, 804 (5th Cir. 2024)(Citing *Ducksworth v. Landrum*, 62 F.4th 209, 219-20 (5th Cir. 2023))(video showing plaintiff in pain while being tased sufficient to meet injury requirement). Trabucco also testified that he had bruising, scrapes on his arms and legs, and burns from the taser. ROA.267. to ROA.268. "[T]he injury requirement is a sliding scale, not a hard cutoff. '[T]he amount of injury necessary to satisfy [the] requirement of 'some injury' ... is directly related to the amount of force that is constitutionally permissible under the circumstances.'" *Buehler v. Dear*, 27 F.4th 969, 982 (5th Cir. 2022)(Quoting *Ikerd v. Blair*, 101 F.3d 430, 434–35 (5th Cir. 1996)). "As long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Byrd v. Cornelius*, 52 F.4th 265, 274 (5th Cir. 2022)(Quoting *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir.

11

2017)(Internal quotation marks omitted)). Clearly, Trabucco had injuries sufficient to meet the injury requirement if Rivera's force was excessive to the need.

The United States Supreme Court has provided guidance for district courts in addressing the issue of excessive force. In *Graham v. Connor*, the Supreme Court listed factors for consideration, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting or attempting to evade arrest by flight. 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

As to the severity of the crime at issue, it is unclear exactly what crime Rivera suspected Trabucco had committed or was committing. Rivera approached Trabucco's car because of a perceived traffic violation in pulling into the parking lot of J&J too quickly. ROA.132.; ROA.922 to ROA.923. Obviously, there was little urgency, as Rivera waited approximately 30 seconds before even walking toward Trabucco's car. ROA.214. at 0:39. Rivera testified that when he ordered Trabucco out of his car, he intended to arrest him for not providing his driver's license and for disorderly conduct. ROA.135. Certainly, these are not severe crimes, particularly when considering the only conduct Rivera had witnessed at that point was Trabucco's alleged improper driving and Trabucco's allegedly being loud in his car.

Rivera testified that he later suspected that Trabucco might be under the influence of some kind of "medication or narcotic" and called a DUI unit to evaluate

Trabucco. This Court has held that DUI is a severe crime, but has also found excessive force in such cases. See *Cooper v. Brown*, 844 F.3d 517, 522-23 (5th Cir. 2016)(finding DUI to be serious crime under *Graham* factors but also finding excessive force when canine deployed on non-resisting or passively resisting suspect). So, even giving Rivera benefit of the doubt that DUI was suspected before force was applied, which is certainly not clear, that alone cannot be dispositive of the analysis.

What is clear is that Trabucco, particularly at the time he was tased, was not posing a threat to Rivera or anyone else. Rivera himself testified at trial that Trabucco was never a threat. ROA.810.; ROA.817.; ROA.820. Even if Rivera had not testified that Trabucco was not a threat, the video evidence makes clear that Trabucco was never a physical threat to Rivera, and Trabucco was never even near another person. ROA.214. Therefore, there is no evidence that Trabucco ever posed a threat to Rivera or anyone else.

Rivera's report stated that, after complying with Rivera's order to exit his car, Trabucco "began to walk to the rear of his vehicle," and after being told by Rivera to stop and turn around, Trabucco "pulled his arm away from [Rivera], pushed [Rivera], and began to flee towards the rear of his vehicle." ROA.132. This is a curious statement because the video does not support these assertions. ROA.214. at 1:34-1:37. In the 2 or 3 seconds that elapse between Trabucco exiting his car and

Rivera beginning to tackle Trabucco to the ground, there is obviously no "fleeing toward the rear of the vehicle."[5] Rather, Trabucco exited his car, took what appeared to be one step toward the rear of his vehicle,[6] turned and looked at Rivera, and was then instantly tackled to the ground. The "push" alleged in Rivera's report, which is not at all evident on the video, was downplayed in Rivera's trial testimony as simply pushing Rivera's arm away. ROA.926.; ROA.938. Clearly, there was no fleeing or evading when Trabucco was taken down by Rivera.

*Clearly established law:*

Again, Rivera tackled Trabucco to the ground just 2 to 3 seconds after Trabucco exited his car in compliance with Rivera's order to do so, despite the fact that it is clear that Trabucco was not fleeing from Rivera as alleged in Rivera's report. ROA.214. at 1:34-1:37. Further, Rivera shot Trabucco in the back with his taser while Trabucco was surrendered, on his knees, with his hands visibly raised in the air. ROA.214. at 1:59; ROA.131. at 0:06.

At trial, Rivera himself testified that while Trabucco was on his knees with his hands up, he was offering no physical resistance to Rivera. ROA.966. Rivera also testified that Trabucco was not violent and never presented a physical threat to

---

[5] Despite stating in his report that Trabucco was fleeing from him, Rivera admitted in his deposition that Trabucco was not actually fleeing. ROA.140.
[6] Recall that Trabucco testified that Rivera told him to exit and step toward the rear of his vehicle. ROA.253. to ROA.255.

Rivera. ROA.959.; ROA.966.; ROA.969. Rivera agreed that if someone was surrendered on their knees with their hands up, that tasing them would be excessive. ROA.967. Rivera also testified that he was aware that he could not constitutionally tase someone who was only offering passive resistance. ROA.968. Rivera testified that he told Trabucco to "get on the ground" and Trabucco "eventually . . . made it to his knees." ROA.961. to ROA.962. Rivera testified that when Trabucco was on his knees, he was repeatedly ordering Trabucco to "get on his stomach." ROA.964.[7] The only justification offered by Rivera for his tasing of Trabucco was that Trabucco did not go to his stomach, and it appeared to Rivera that Trabucco was going to stand up from his knees. Rivera testified that he tased Trabucco because "I thought he was going to get back up and continue to act the way that he's been acting, so that's why he got tased." ROA.967. Again, the video makes clear that Trabucco was on his knees just one second before being shot in the back by Rivera with a taser. ROA.131. at 0:05-0:06; ROA.214. at 1:59-2:00. There is simply no indication on the video that Trabucco attempted to stand, much less to flee.

In the case of *Trammell v. Fruge*, this Court held that it was clearly established that "it was objectively unreasonable for several officers to tackle an individual who was not fleeing, not violent, not aggressive, and only resisted by pulling his arm

---

[7] Again, Rivera's assertion that he was ordering Trabucco to his stomach after Trabucco was on his knees is not supported by the video or audio evidence. ROA.131.

away from an officer's grasp." 868 F.3d 332, 343 (5th Cir. 2017). *Trammell* is not the only case which clearly established that conduct such as Rivera's was objectively unreasonable. In *Hanks v. Rogers*, this Court held that:

> an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most passive resistance, and whom the officer stopped for a minor traffic violation.

853 F.3d 738, 747 (5th Cir. 2017). The *Hanks* Court reversed the grant of summary judgment to a defendant police officer who performed a "physical takedown" on a passively resisting motorist who had been stopped for a minor traffic offense, holding such conduct to be "clearly unreasonable and excessive." 853 F.3d at 749-50.

Again, Trabucco stepped out of his vehicle as requested by Rivera, and a mere 2 to 3 seconds later, he was being tackled to the ground. "[T]he speed with which an officer resorts to force is relevant in determining whether that force was excessive to the need." *Trammell*, 868 F.3d at 342(Citing *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012); *Deville v. Marcantel*, 567 F.3d 156, 168 (5th Cir. 2009)). Certainly, the video evidence supports that this was clearly an "abrupt resort to overwhelming physical force." ROA.214. at 1:34-1:36. Rivera's takedown of Trabucco was excessive to the need for force.

Similarly, when Trabucco was tased, he was on his knees, surrendered, with his hands visibly in the air. ROA.214. at 1:59. Rivera testified that Trabucco "lifted his leg" after going to his knees, and that made Rivera believe that Trabucco was going to stand up. ROA.932. to ROA.933. Rivera also testified that he was telling Trabucco to go to his stomach after telling him to go to the ground, and that Trabucco did not comply with the order to go to his stomach. ROA.931-932. Rivera's testimony does not align with the video evidence.[8] Where the record, including video, blatantly contradicts a party's version of the events so that no reasonable jury could believe it, then the Court should not adopt that party's version of the events for the purpose of ruling on a summary judgment motion. *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed. 2d 686 (2007). Trabucco was on his knees for only one second before Rivera shot his taser into Trabucco's back. ROA.214. at 1:59-2:00; ROA.131. at 0:05-0:06. One second is hardly time for an officer to give an order for a suspect to go to their stomach, let alone sufficient time for that order to be given and for the suspect to comply. See *Bagley*, 90 F.4th at 804(faulting officer for quickly resorting to use of taser without giving reasonable opportunity for suspect to comply with verbal order).[9] Further, there was not sufficient time or

---

[8] Nor does it align with the eyewitness testimony from Jessica Stanton. ROA.755.

[9] *Bagley* was decided in 2024, but the arrest in *Bagley* took place in 2019, two years before Rivera's arrest of Trabucco. 90 F.4th at 800-01. Therefore, the principles relied upon in *Bagley* must have been clearly established as of 2019.

movement for any reasonable officer to believe that Trabucco was evading or fleeing. Trabucco was obviously surrendered.

"Our cases on police use of tasers have paid particular attention to whether officers faced *active* resistance when they resorted to a taser." *Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021)(Emphasis added). See *Pratt v. Harris Cnty.*, 822 F.3d 174, 182 (5th Cir. 2016)(tasing justified where suspect failed to comply, resisted handcuffing, kicked officer). "By contrast, we have found excessive force when officers tased someone offering only passive resistance or no resistance at all." *Cloud*, 993 F.3d at 385.

Importantly, an officer cannot use prior resistance to justify a use of force once that resistance has stopped. "[A]n exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased." *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 413 (5th Cir. 2009). "Use of a taser is appropriate when a suspect *continues to resist arrest*. We have held that tasing is permissible 'after [a suspect] continuously fail[s] to comply' and 'resist[s] handcuffing,' particularly when it is not 'the first method to gain . . . compliance.'" *Cadena v. Ray*, 728 Fed. Appx. 293, 297 (5th Cir. 2018)(Quoting *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 182 (5th Cir. 2016)(Emphasis added)). "But we have also said that tasing is inappropriate where either it is unclear that the plaintiff was resisting or the plaintiff was not resisting at all." *Cadena*, 728 Fed. Appx. at 297(Citing

*Darden v. City of Fort Worth*, 880 F.3d 722, 729-31 (5th Cir. 2018) and *Peña v. Rio Grande City*, 879 F.3d 613, 619-20 (5th Cir. 2018)). See also, *Bagley*, 90 F.4th at 800("[I]t may be objectively reasonable under certain circumstances for police officers to use physical force when a person refuses to comply with an officer's lawful commands—but not after that person has begun to comply.").

Despite acknowledging that DeSoto County's policies required verbal warning, Rivera admittedly gave Trabucco no verbal warning that he was going to tase him. ROA.145. to ROA.147. Rather, Rivera shot his taser into Trabucco's back while he was on his knees with his hands in the air, not facing Rivera. See *Autin v. City of Baytown*, 174 Fed. App'x 183, 185 (5th Cir. 2005)(objectively unreasonable for officer to repeatedly tase suspect in back without verbal warning of intent to do so and to continue to tase after suspect on ground).

This Court has held, where a suspect is facing away from an officer and is presenting his empty hands, and where the officer has a taser trained on the suspect's back, the officer should continue to verbally negotiate, including threatening force if necessary, rather than abruptly resorting to actual physical force. *Hanks*, 853 F.3d at 748. This Court further held a reasonable officer would not perceive active resistance or an attempt to flee where a suspect takes a small, lateral step, and the step is not accompanied by any obvious signs of violence or flight, and where the suspect does not turn his body or move his hands, which are visible. *Id.* at 746. While

*Hanks* dealt with a takedown and not a tasing, "'[l]awfulness of force ... does not depend on the precise instrument used to apply it. Qualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel.'" *Cooper*, 844 F.3d at 525(Quoting *Newman v. Guedry*, 703 F.3d 757, 763-64 (5th Cir. 2012)).

While the case law cited above supported Trabucco's claims and clearly established that Rivera's use of force was in violation of Trabucco's constitutional rights, this Court has held that the clearly established prong of qualified immunity analysis does not require a "case directly on point." *Id.* at 517. Further, where the use of force is *obviously* excessive to the need, no prior analogous case is required, as the case can be decided on the *Graham* factors alone. *Id.* at 524; see also *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed. 2d 583 (2004)(Citing *Hope v. Pelzer*, 536 U.S. 730, 738, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)).

In finding that disputed facts precluded summary judgment, the district court stated that:

> Officer Rivera and Mr. Trabucco dispute, among other things, the nature of their verbal interactions; whether Mr. Trabucco posed an immediate threat to the safety of others; whether he was actively resisting arrest; and the scope of Mr. Trabucco's injuries.

ROA.452. After the close of evidence at trial, when Trabucco reiterated his motion for judgment as a matter of law, the district court stated that the motion would be denied because the call should be made by the jury. ROA.1011. In denying

Trabucco's post-trial motion for judgment as a matter of law, the district court stated that the factual dispute at trial arose from whether Rivera was giving Trabucco an order to go to his stomach before tasing Trabucco. ROA.652.

Again, while there were disputes of fact in this case, even taking all facts in the light most favorable to Rivera, judgment as a matter of law on liability was proper. Rivera admitted that Trabucco was not a threat. ROA.810.; ROA.817.; ROA.820. Objectively, the video makes it clear that Trabucco was never a threat to Rivera, particularly at the time he was tackled and tased. ROA.214.; ROA.131. Even if Rivera was ordering Trabucco to his stomach,[10] it does not change the fact that Rivera tased Trabucco, without verbal warning, just one second after Trabucco went to his knees with his hands visibly raised in the air, hardly a reasonable amount of time to expect compliance with such an order. ROA.214. at 1:59-2:00.

Here, Trabucco was tackled to the ground almost immediately upon complying with an order to exit his vehicle, and he was not fleeing or physically threatening Rivera or anyone else when that occurred. Then, Trabucco was shot in the back with a taser just one second after dropping to his knees with his hands visibly in the air, obviously surrendering to Rivera. In light of the clearly established law cited above, Rivera should have been on notice that his actions violated Trabucco's constitutional rights. Regardless, this is an obvious case of excessive

---

[10] Which is unsupported by the audio and the eyewitness testimony. ROA.131.; ROA.755.

force, and the district court should have granted Trabucco judgment on liability as a matter of law, either in his pretrial motion, at trial, or in his post-trial motion. This Court should reverse the district court and remand this cause with instructions to grant judgment to Trabucco as a matter of law on the issue of liability and to allow a new trial on damages.

### *The district court erred in its instruction to the jury on qualified immunity:*

When reviewing denial of a motion for new trial, "[w]e will reverse the trial court's denial . . . only where there is a clear showing of an abuse of discretion." *Hiltgen v. Sumrall*, 47 F.3d 695, 703 (5th Cir. 1995). Here, new trial is warranted because the jury was not properly instructed on qualified immunity.

> This court reviews jury instructions under a two-prong standard of review. First, the challenger must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the instructions properly guided the jury in its deliberations. Second, even if the court finds that the jury instructions were erroneous, it will not reverse if it determines, based upon the entire record, that the challenged instruction could not have affected the outcome of the case.

*Puga v. RCX Solutions, Inc.*, 922 F.3d 285, 291-92 (5th Cir. 2019)(Internal citations omitted).

### *Salazar and Escobar are not applicable to this case:*

In instructing the jury on qualified immunity, the district court included a quote from *Salazar v. Molina*, 37 F.4th 278 (5th Cir. 2022). ROA.550. Specifically, the district court stated,

[T]he rule is not that an 'unambiguous surrender' negates any threat posed by a previously hostile suspect . . . Rather, the relevant inquiry is whether—despite the appearance of unambiguous surrender—'an officer [would] have reason to doubt the suspect's compliance and still perceive a threat.'

ROA.550. See *Salazar*, 37 F.4th at 283. This quote was provided to the jury with no factual context from the *Salazar* case. Counsel for Trabucco objected at trial to this portion of the instruction being given. ROA.1023. to ROA.1024.

*Salazar* involved a high-speed car chase at 2:00 a.m. where the suspect, Salazar, was at times doing 70 miles per hour down narrow residential streets. 37 F.4th at 280. Blocked by a roadblock, Salazar stopped his vehicle, got out of the car, and lay on his stomach with his legs crossed. *Id.* He uncrossed his legs just two seconds before an officer reached him on foot. *Id.* The officer tased Salazar in the back as he lay on the ground. *Id.*

The *Salazar* Court weighed heavily that Salazar was suspected of a serious felony and led police on a dangerous, high-speed chase through residential streets, putting lives at risk, and was in an area known for drug cartel activity. *Id.* 281-83. Finding that it was not unreasonable for the officer to doubt the sincerity of Salazar's surrender, the *Salazar* Court stated, "when a suspect has put officers and bystanders in harm's way to try to evade capture, it is reasonable for officers to question whether the now-cornered suspect's purported surrender is a ploy." *Id.* at 282.

*Salazar*'s holding relied heavily upon *Escobar v. Montee*, 895 F.3d 387 (5th Cir. 2018).[11] The *Escobar* Court found that qualified immunity applied to an officer's allowing his dog to bite and hold Escobar even though Escobar had surrendered by laying on the ground. 895 F.3d at 396. However, key to the holding in *Escobar* were these facts: (1) Escobar was suspected of felony assault on his wife; (2) Escobar fled on foot when officers were approaching; (3) the chase was at night; (4) Escobar had a knife; (5) Escobar had told his mother that if the police wanted him, they would have to kill him, and his mother communicated that to the police; and (6) when Escobar surrendered, his knife was still within reach, where it could be grabbed and used against the officers.

The holdings in *Salazar* and *Escobar* obviously turned on specific facts. The arrestees were suspected of serious crimes, Salazar of leading police on a dangerous high-speed chase through residential neighborhoods, and Escobar of felony assault. Each suspect had fled from police, and each suspect posed, or had recently posed, a danger or risk to officers or others. Officers knew Escobar had a weapon within reach. Each apprehension took place at night with limited visibility. Salazar was in an area known for drug cartel activity. These holdings obviously turned on an officer's reasonable perception in light of prior actions, that Salazar and Escobar

---

[11] The jury instruction cited to *Escobar*, as well as *Salazar*. ROA.550.

each posed a continued risk to safety, and therefore, force in the face of apparent surrender was not unreasonable according to this Court.

The district court was obviously influenced by *Salazar*. In its order denying Trabucco's post-trial motions, the district court stated:

> This outcome is dictated by authority cited by the defendant, namely *Salazar v. Molina*, where the Fifth Circuit held that an officer did not violate the Fourth Amendment by applying a ten second tasing on a suspect who is lying prone on the ground with his hands above his head. So long as *Salazar* remains good law in this circuit, trial courts and juries will be hard-pressed to find grounds to award a verdict for a plaintiff whose constitutional rights have been violated.

ROA.653. Appellant here argues that *Salazar* was incorrectly decided and should be reexamined. *Salazar* is distinguishable from the case upon which it relies, *Escobar*, in that Salazar was not known to be violent[12] and Escobar, who was known to be violent, was also known to have a weapon within reach when force was applied. Salazar was not known to have a weapon. Certainly, there is support for finding a tasing of a surrendered suspect in Salazar's position to be clearly established as excessive. See *Cloud*, 993 F.3d at 384(justification for tasing turns on whether suspect actively resisting); see also, *Bagley*, 90 F.4th at 800(force not justified by prior resistance if suspect has begun to comply). At the very least, it would be helpful for this Court to clarify that the holding in *Salazar*, that a surrendered suspect can be tased without violation of the Fourth Amendment, is based on the extreme levels of

---

[12] 37 F.4th at 283.

resistance and danger identified in *Salazar* and *Escobar*. Certainly, if this Court is so inclined, *Salazar* could be overruled based upon prior precedent and dissimilarities between *Salazar* and *Escobar*. However, overruling of *Salazar* is not necessary for the correct result to be reached in this case.

Unlike Escobar and Salazar, Trabucco was never a threat to anyone. Rivera himself testified at trial that Trabucco was never a threat. ROA.810.; ROA.817.; ROA.820. While Trabucco did pull away from the chokehold in which Rivera placed him, that is not the force that is being challenged. Rivera's takedown and tasing each occurred when Trabucco was offering absolutely no resistance. The arrest took place in broad daylight in a safe area. Trabucco did not flee. Trabucco was not suspected of a serious or violent crime. Trabucco was not known or suspected to have a weapon. In other words, absolutely none of the facts upon which this Court justified its holdings in *Salazar* and *Escobar* were present in this case. Therefore, *Salazar* and *Escobar* are non-analogous to this case.

This begs the question of why it would be proper to instruct the jury on those cases in allowing the jury to determine whether qualified immunity was appropriate. Qualified immunity is a question of law that should ordinarily be decided by a court long before trial. See *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). A court deciding qualified immunity would not pluck one sentence from a factually inapposite case and find that holding to be applicable.

Rather, courts routinely *distinguish* non-analogous cases, not apply them. Court opinions are fact-intensive by necessity to give the bench and bar guidance on similar cases. See *Graham*, 490 U.S. at 396(excessive force inquiry "requires careful attention to the facts and circumstances of each particular case"). It makes no sense that a *court* deciding qualified immunity would obviously distinguish a non-analogous case, but that a *jury* would be instructed on the holding of a non-analogous case when tasked with deciding the same issue.

Again, the jury was obviously not provided with any factual context for *Salazar* and *Escobar*, but only selected sentences from their holdings. ROA.550. Both the *Salazar* and *Escobar* Courts took great pains to list the specific factual justifications for their holdings, as well as to distinguish non-analogous cases. 37 F.4th at 284-89; 895 F.3d at 391-96. "[T]here are cases in which the constitutional question is so factbound that the decision provides little guidance for future cases." *Pearson v. Callahan*, 555 U.S. 223, 237, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). *Salazar* and *Escobar* were factbound decisions, and those facts are not analogous to this case. The jury here should not have been instructed on *Salazar* and *Escobar*, and it is clear that the instruction resulted in the qualified immunity verdict in Rivera's favor.

*Analogous factual context should have been provided to the jury:*

We know that ordinarily, courts decide the issue of qualified immunity. When

courts decide qualified immunity they have the benefit of briefing and research from litigants and their own chambers. Clearly, an analysis of prior case law requires an examination of the facts upon which those cases were decided, as the context upon which those decisions were made is important to deciding whether the facts are sufficiently analogous to the facts of the case at hand to be applicable.

Asking a jury to decide qualified immunity on bare bones holdings from legal opinions without any factual context is asking laypersons to perform a court function without court resources. Being given only a holding, a jury does not have the benefit of seeing the facts upon which the courts have decided whether force is reasonable. Factual context is necessary for proper consideration of qualified immunity.

In an effort to provide factual context, Trabucco proposed the following be added to the qualified immunity jury instruction:

> Where a suspect is facing away from an officer and is presenting his empty hands, and where the officer has a taser trained on the suspect's back, the officer should continue to verbally negotiate, including threatening force if necessary, rather than abruptly resorting to actual physical force. *Hanks v. Rogers*, 853 F.3d 738, 748 (5th Cir. 2017).[13]

---

[13] The exact quote upon which this is based is as follows:

> For the last thirty seconds before Officer Rogers administered the "half spear," Hanks stood facing away from Officer Rogers, presenting his empty hands on the trunk of his car, the back of his head, and finally behind his back. Officer Rogers kept his taser at the ready and trained on Hanks's back the entire time. Under such circumstances, which favor the plaintiff even more than those presented in *Deville*, our case law clearly establishes that Officer Rogers should have continued to verbally negotiate—including by threatening force, if necessary—rather than abruptly resorting to "actual" physical force.

*Hanks*, 853 F.3d at 748(Internal citations omitted).

> A reasonable officer would not perceive active resistance or an attempt to flee where a suspect takes a small, lateral step, and the step is not accompanied by any obvious signs of violence or flight, and where the suspect does not turn his body or move his hands, which are visible. *Hanks v. Rogers*, 853 F.3d 738, 746 (5th Cir. 2017).[14]

ROA.504. The district court rejected the proposed addition to the instruction offered by Trabucco. ROA.549. to ROA.550.

The holdings from *Hanks* are critically important to a complete understanding of what the law was at the time Rivera tased Trabucco. Rivera stated that Trabucco lifted his knee, as if he was going to stand. ROA.932. to ROA.933. In response, Rivera almost simultaneously tased him. ROA.214. at 1:52-1:59. This could not be more analogous to the *Hanks* case where the plaintiff took a small lateral step and was almost simultaneously subjected to physical force.[15] The *Hanks* Court found the force to be objectively unreasonable in light of clearly established law. The

---

[14] The exact quote upon which this is based is as follows:

> It is not clear from the recording whether Officer Rogers rushed towards and made contact with Hanks in response to, or merely simultaneously with, Hanks's lateral step. It is clear, however, that Hanks's step was not accompanied by any obvious signs of violence or flight: Hanks did not turn his body or move his hands, which remained folded behind his back and plainly visible to Officer Rogers. Under the circumstances reflected in the recording, we cannot conclude that a reasonable officer would have perceived active resistance or an attempt to flee.

*Id.* at 746.

[15] Again, "'[l]awfulness of force ... does not depend on the precise instrument used to apply it. Qualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel.'" *Cooper*, 844 F.3d at 525(Quoting *Newman v. Guedry*, 703 F.3d 757, 763-64 (5th Cir. 2012)).

contextual holdings from *Hanks* are certainly a part of the clearly established law that is applicable to this case.

Additionally, Trabucco proposed that the jury be instructed that "An arrestee pulling away from an officer's grasp alone does not justify an officer tackling him to the ground" based upon a favorable citation in *Cloud v. Stone*[16] to *Trammell v. Fruge*.[17] ROA.503. This instruction, which was rejected by the district court, would have provided the jury with the appropriate factual context for considering Rivera's takedown of Trabucco.

Trabucco also proposed that the jury be instructed that they could find the force to be *obviously* excessive as follows:

> Where the violation of a constitutional right is obvious, there need not be a materially similar case for the right to be clearly established. *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed. 2d 583 (2004)(Citing *Hope v. Pelzer*, 536 U.S. 730, 738, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)).

ROA.503. This principle was also not included in the district court's instruction. ROA.549. to ROA.550. We know that the jury found there to be a constitutional violation. ROA.559. With the jury having been instructed that qualified immunity protects all but the "plainly incompetent or those who knowingly violate the law" (ROA.549.), the jury should have been informed that qualified immunity does not protect those who commit obvious violations, regardless of whether there was a case

---

[16] 993 F.3d at 385.
[17] 868 F.3d at 341.

directly on point. Certainly, tasing an individual in the back when he is on his knees with his hands raised and visible should be viewed as "obviously" excessive.

Here, instructing the jury on non-analogous case law and failing to provide analogous factual context for consideration in the qualified immunity instruction created substantial and ineradicable doubt that the jury was properly guided in its deliberations on the issue. Further, since the jury decided that Rivera's actions did in fact violate Trabucco's Fourth Amendment rights, the qualified immunity instruction obviously did have an effect on the outcome of the case, as the issue of qualified immunity was outcome determinative. Therefore, the requirements of the two-prong standard of review are met,[18] and if this Court finds that judgment as a matter of law should not be granted to Appellant, then the jury's verdict should be reversed and the case should be remanded for new trial.

### *The jury's verdict was irreconcilably conflicted and unsupported by substantial evidence:*

In addition to the improper instruction on qualified immunity, new trial is also warranted because the jury's verdict is not supported by substantial evidence.

> We may overturn a jury verdict only if it is not supported by substantial evidence, meaning evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions . . . accord[ing] all reasonable inferences to the nonmovant . . . and . . . revers[ing] only if no reasonable jury could have arrived at the verdict.

---

[18] See *Puga*, 922 F.3d at 291-92.

*Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998)(Internal citations omitted).

While this Circuit allows qualified immunity to be a jury question, the issue should ordinarily be decided by a court before trial. *Hunter*, 502 U.S. at 228. "Immunity's shield against suit is lost, of course, when police officer defendants go to trial. At that point, if—and this is a big if—there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question." *Presley v. City of Benbrook*, 4 F.3d 405, 410 (5th Cir. 1993). The *Presley* Court went on to state, "The Fifth Circuit pattern jury charge exemplifies how a jury would determine qualified immunity in excessive force and certain fourth amendment cases. See Fifth Circuit Pattern Jury Charges §§ 10.1, 10.2, 10.5 (West 1993). We do not here endorse all these charges, but simply observe that it is not impossible for a jury to be asked such questions." 4 F.3d at 410n.5. This Court has also recognized the risk of confusion inherent in submitting the issue of qualified immunity to a jury.

> It is plausible that a jury could be confused by an interrogatory asking whether the force [the officer] used against [the plaintiff] amounted to cruel and unusual punishment, and then being asked in an immediately following interrogatory whether the conduct of [the officer] was reasonable. Indeed, finding that the force used against [the plaintiff] was cruel and unusual would ordinarily seem to preclude the possibility of a finding that actions of [the officer] were reasonable.

*Sikes v. Gaytan*, 218 F.3d 491, 494 (5th Cir. 2000).[19]

---

[19] The *Sikes* Court was addressing whether it was proper for a district court to present a single interrogatory to a jury addressing both the alleged constitutional violation and qualified immunity. Ultimately, the *Sikes* Court found no abuse of discretion. *Id.*

As already discussed extensively, the jury returned a verdict finding that Rivera had used excessive force against Trabucco, but nonetheless, also finding that Rivera was entitled to qualified immunity. ROA.559. The jury was instructed on excessive force. ROA.547-548. The jury was told to consider the *Graham* factors, i.e., the severity of the crime at issue, whether Trabucco posed an immediate threat to the safety of officers or others, and whether Trabucco was actively resisting or attempting to evade arrest. ROA.547. to ROA.548. The jury was told to consider this question, not from the subjective point of view of Defendant Rivera, but from the perspective of a reasonable officer without the benefit of 20/20 hindsight. ROA.547. to ROA.548. Having been so instructed, the jury found that Rivera violated Trabucco's Fourth Amendment right against the use of excessive force. ROA.559. In other words, Rivera's use of force against Trabucco was objectively unreasonable according to the jury.

Since the jury found the force used by Rivera to be excessive, the only way that qualified immunity could have been granted would be for the jury to find that the law was not clearly established as of July 7, 2021. Above, Appellant has already addressed the instruction that was given to the jury on qualified immunity, arguing that the jury was not "properly instructed." *Presley*, 4 F.3d at 410(jury "properly instructed" may decide qualified immunity).

This Court has recognized that there is no "inherent conflict" between a finding of a constitutional violation and a finding of qualified immunity. *Snyder*, 142 F.3d at 800. "There are two components to the qualified immunity inquiry: (1) clearly established law and (2) the information the ... officers possessed." *Id.* "[T]he officer could make a constitutionally reasonable judgment based upon a factual misperception." *Id.*

In *Snyder*, this Court reconciled the jury's verdict by finding:

> The jury's answer that Trepagnier used excessive force apparently was based on its conclusion that Snyder did not actually have a gun. The jury's additional answer that Trepagnier had a reasonable belief that his actions would not violate [Snyder's] constitutional rights must have been based on a finding that Trepagnier reasonably believed Snyder had a gun so that, given the uncertain facts Trepagnier possessed, it cannot be said that [he] knew [he] was violating a person's rights.

*Id.* at 801(Internal quotations omitted).[20] Similarly, in addressing a split verdict, this Court in *Presley* determined that:

> A fact finder could have decided that Officers Wallace and Horan reasonably believed, based on the information then known to them, that Presley was in fact Beckley, the violent suspect whom they had come to arrest. Pursuant to the warrant for Beckley, and thinking Presley was Beckley, they would have been entitled to enter Presley's home. Alternatively, the fact finder could have decided that the officers, insisting on Presley's compliance with the driver's license identification law, reasonably pursued him into the house to arrest him for that violation. Under either scenario, their actions would have been shielded by qualified immunity.

---

[20] Trepagnier testified that he saw Snyder with a small pistol before firing his weapon at Snyder. *Id.* at 794.

4 F.3d at 410.[21] And in a more recent case, this Court addressed a split verdict and held:

> While Officer Faul, according to the jury, used objectively unreasonable excessive force in deploying the canine and shooting Mason, this is not fatally inconsistent with a factual finding of immunity. The jury must have found that although Officer Faul's belief that Mason posed and continued to pose a serious threat was incorrect, it was excusable or, at most, negligent in the heat and immediacy of the confrontation. Put otherwise, for immunity purposes, the jury need not have accepted . . . that Mason posed no "sufficient threat" before or during the confrontation.

*Mason v. Faul*, 929 F.3d 762, 766 (5th Cir. 2019).[22]

What each of these holdings share is evidence of a reasonable belief by an officer which justified their mistakes. Here, though, there is no such evidence. Rivera did not believe that Trabucco was a wanted violent felon. Rivera did not believe that Trabucco had a weapon. Rivera never stated that Trabucco made a move like he might be going for a weapon. Instead, Rivera testified that Trabucco pulled away from his grasp, and that was why he was tackled. ROA.926.; ROA.938. See *Trammell*, 868 F.3d at 343(objectively unreasonable for several officers to tackle individual who was not fleeing, not violent, not aggressive, and only resisted by pulling arm away from officer's grasp). He testified, "I thought he was going to get back up and continue to act the way that he's been acting, so that's why he got tased."

---

[21] Officers testified that based on Presley's behavior, location, and description, they believed he was a wanted violent felon. *Id.* at 407.
[22] Faul testified that he believed Mason was moving suddenly for a gun in his waistband when he released his dog and shot at Mason. *Id.* at 763.

ROA.967. This was based upon Trabucco allegedly lifting his knee after only having been on his knees for one second. *Hanks*, 853 F.3d at 746(reasonable officer would not perceive active resistance or attempt to flee where suspect takes small, lateral step, and step is not accompanied by obvious signs of violence or flight, and where suspect does not turn body or move hands, which are visible). In other words, in light of the clearly established law outlined above, the jury's verdict that Rivera made a reasonable mistake is unsupported by substantial evidence in the record. With an absence of evidence like that which was present in *Snyder*, *Presley*, and *Mason*, the jury's verdict is irreconcilably conflicted. If the force was excessive to the need, as the jury found, then the law was clear and Rivera's violation of Trabucco's constitutional rights was not a reasonable mistake.

Should this Court find that Appellant is not entitled to judgment as a matter of law on liability, then new trial should be granted since the jury's verdict is unsupported by substantial evidence.

## CONCLUSION

For the reasons stated above, Appellant respectfully requests this Court reverse the district court's denial of judgment as a matter of law on the issue of liability to Appellant and remand for new trial on damages. In the alternative, Appellant respectfully requests this Court reverse the jury's verdict and remand this matter to the district court for new trial.

Respectfully submitted,

*/s/Brandon Flechas*
BRANDON FLECHAS (MS BAR NO. 102283)
STROUD, FLECHAS & DALTON
5779 Getwell Road, Suite C-1
Southaven, MS 38672
(Tel.)(662)536-5656
(Fax)(662)536-5657
(email) brandon@stroudlawyers.com

**CERTIFICATE OF SERVICE**

I, Brandon Flechas, certify that I electronically filed these record excerpts with the Clerk of the Court using the electronic filing system, which sent notification of such filing to all counsel of record.

This the 5th day of December, 2024.

*/s/Brandon Flechas*
BRANDON FLECHAS

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.  This brief complies with the type-volume limitations of Fed.R.App.P. 32(a)(7)(B)(i) because, excluding the parts of the brief exempted by Fed.R.App.P. 32(f), it contains 9,235 words.

2.  This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because it has been prepared in proportionally-spaced typeface, including serifs, using Word, in Times New Roman 14-point font, except for footnotes, which are in proportionally-spaced typeface, including serifs, using Word in Times New Roman 12-point font.

Respectfully submitted,

/s/Brandon Flechas
Brandon Flechas
Counsel for Appellant

Dated: December 5, 2024